UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| THOMAS HUGHES, JR., ) | |
| ) | |
| Plaintiff, ) | No. 6:24-CV-46-HAI |
| ) | |
| v. ) | |
| ) | **MEMORANDUM OPINION &** |
| MARTIN O'MALLEY, ) | **ORDER** |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Claimant Thomas Hughes, Jr. seeks review of the Social Security Administration's ("the SSA") denial of his request for disability benefits beginning on October 19, 2019. D.E. 9 at 14. Hughes initially filed a Title II application for disability and disability insurance on May 5, 2021. *Id.* Administrative Law Judge ("ALJ") Joyce Francis denied his application on April 10, 2023. D.E. 10 at 2. After exhausting his administrative remedies, Hughes sought judicial review of the denial on March 29, 2024. D.E. 1 at 2. The Commissioner filed an answer on May 22, 2024. D.E. 9. Hughes filed his opening brief on June 21, 2024. D.E. 10. The Commissioner filed a responsive brief on July 8, 2024. D.E. 12. Hughes filed a reply brief on July 22, 2024. D.E. 13. Thus, the matter is ripe for adjudication.

The Court has jurisdiction to hear Taylor's challenge under 42 U.S.C. § 405(g). Both parties consented to the referral of this matter to a magistrate judge. D.E. 5; D.E. 6. Accordingly, this matter was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. D.E. 4.

The Court, having reviewed the record and for the reasons stated herein, **GRANTS** Hughes's request for remand for further proceedings consistent with this Order.

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim. The ALJ followed these procedures in this case. *See* D.E. 9 at 15-25.[1]

At the first step, the ALJ must determine whether the claimant is currently engaged in a substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Here, the ALJ found Hughes had not been engaged in a substantial gainful activity since the alleged onset date of his disability, October 19, 2019. D.E. 9 at 16.

At the second step, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment that meets the [Social Security Act's] duration requirement . . . or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). Here, the ALJ determined that Hughes had the following severe impairments: obesity; status post C3-6 laminectomy and L3-5 laminectomy; left foot bone spur; ankle contractures; and Achilles tendinitis. D.E. 9 at 17.

At the third step, the ALJ must determine whether the claimant's impairments meet or equal an impairment listed in 20 CFR Part 404 Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, the claimant is found to be disabled. *Id.* Here, the ALJ found Hughes to have no such impairment. D.E. 9 at 17.

When a claimant is not found disabled at the third step, the ALJ proceeds to the fourth step. At the fourth step, the ALJ must determine the claimant's past relevant work history and Residual Functional Capacity ("RFC"), which is his ability to do physical and mental work activities on a

---

[1] Pinpoint citations herein are to the blue page numbers generated by CM/ECF.

sustained basis despite limitations from his impairments. 20 C.F.R. § 404.1520(a)(4)(iv). Here, the ALJ determined Hughes had:

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), except he can occasionally climb ramps and stairs but can never climb ladders, ropes, or scaffolds. He can frequently balance as defined by the Selected Characteristics of Occupations in the Dictionary of Occupational Titles and can occasionally stoop, kneel, crouch, and crawl. He can frequently be exposed to vibration; can frequently be exposed to unprotected heights or dangerous moving machinery; and can frequently reach overhead bilaterally.

D.E. 9 at 19. The ALJ further determined that Hughes could not perform his past relevant work as a highway worker, but could work as an "office helper," "routing clerk," and "marking clerk." *Id* at 23-24. As such, the ALJ found that Hughes was not disabled. *Id.* at 24.

Hughes contests the ALJ's decision on multiple grounds. First, he argues that the decision was procedurally deficient, as it did not properly articulate the ALJ's finding of persuasiveness of three medical source opinions on the record. D.E. 10 at 5-7. Next, Hughes contends that the ALJ erred in not considering his cane use when evaluating his RFC. *Id.* at 8. Finally, Hughes argues the ALJ erred by not ordering a consultative exam ("CE") and instead relying on "her own independent evaluation of the [medical] evidence." *Id.* 9-10. For the reasons described below, the Court finds that, while the ALJ was justified to discount Hughes's use of a cane and deny a CE, she failed to properly explain how she weighed the medical opinions. Thus, remand is appropriate.

## II.     Medical Source Opinions

Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). By regulation, ALJs are required to evaluate the persuasiveness of medical opinions in comparison to the record as a whole. 20 C.F.R. § 404.1520c. In particular, the ALJ is required to articulate the "consistency" and "supportability" of the medical opinion. *Id.* Federal courts may remand the

3

Commissioner's decision on the basis that the ALJ failed to follow a procedural rule, as "it is an elemental principle of administrative law that agencies are bound to follow their own regulations." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545, (6th Cir. 2004).

The ALJ's evaluation must show that it considered and accurately recounted the relevant evidence. *Cosma v. Comm'r of Soc. Sec.*, No. 15-2418, 2016 WL 3209500, at *3 (6th Cir. 2016). Misrepresentations of evidence that are material to the case can be reversible error. *See Shively v. Comm'r of Soc. Sec.*, No. 1:13-CV-788, 2014 WL 7653637 (S.D. Ohio, Dec. 22, 2014) (reversing, in part, because the ALJ misrepresented the record).

When evaluating medical source opinions, an ALJ must consider five factors. 20 C.F.R. § 404.1520c. Of these five factors, the source's "consistency" and "supportability" are most important. *Id.* at (a)(2). An ALJ is required to articulate the supportability and consistency of each medical source opinion. *Id.* at (b)(2). The supportability factor "evaluates how well 'the objective medical evidence and supporting explanations presented by a medical source' support a medical opinion." *Sallaz v. Comm'r of Soc. Sec.*, No. 23-3825, 2024 WL 2955645, at *15 (6th Cir. June 12, 2024) (quoting 20 C.F.R. § 404.1520c(c)(1)). Meanwhile, "[t]he more consistent a medical opinion or prior administrative medical finding is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion or prior administrative medical finding will be." *Id.* "Unlike the supportability factor, an evaluation of a medical opinion's [consistency] requires the ALJ to compare the physician's opinion to other medical and non-medical evidence from other sources." *Smith v. O'Malley*, No. 5:23-CV-00220-MAS, 2024 WL 4254083 (E.D. Ky. Sept. 30 2024).

4

### I.     Medical Opinion of Dr. Hilliard

Plaintiff first contends that the ALJ failed to properly articulate why she found the medical opinion statement from Dr. Hilliard unpersuasive. In rejecting the medical opinion of Dr. Hilliard, the ALJ stated the following:

> The undersigned is not persuaded by the medical source opinion from Dr. Hilliard. Dr. Hilliard opined the claimant could not lift heavy objects or work in uncomfortable positions; be exposed to dangerous working conditions, including rough terrain; and would need frequent breaks (Exhibit 8F, pages 1-4). Dr. Hilliard did treat the claimant for a few months, but his findings are internally inconsistent with the exam findings showing full muscle strength in all of his extremities except 4/5 strength in his left lower extremity. When he complained of increased pain, his medications were adjusted to address his pain (Exhibits 7F; 9F, pages 81-84 and 89- 100; 16F, pages 16-20; and 17F). As such, he did not complain about not being able to [sic] perform his daily activities until July 2022 when he had an exacerbation with his Achilles tendinitis, requiring physical therapy (Exhibit 16F, pages 34-35, 39, 43, and 46-58).

D.E. 9 at 23.

While this analysis seems to contextualize the ALJ's finding, her statements were substantially inconsistent with the record. Dr. Hilliard did not just treat Plaintiff "for a few months." *Id.* Dr. Hilliard was Plaintiff's primary neurologist from at least January 2019 to October 2020. D.E. 9 at 399, 554. The record contained nineteen reports from different visits between Hughes and Dr. Hilliard during this time period. *Id.* at 274, 288, 388, 399, 421, 447, 458, 466, 479, 501, 509, 517, 530, 533, 536, 541, 545, 549, 554. Dr. Hilliard conducted all six of Hughes's spinal surgeries. D.E. 10 at 2-3. An ALJ is not required to give preferential treatment to a treating physician, but this and other clear misstatements of the record undermine the ALJ's attempt to satisfy the required articulation standards. *See* 20 C.F.R. § 404.1520c(1).

The ALJ continued to misstate the record throughout her consideration of Dr. Hilliard's opinion. She first stated that the medications were "adjusted to address his pain." *Id.* at 23 (citing Exhibit 7F, 9F p. 81-84, 89-100, 16 F p. 16-20, and 17F). This is true; Hughes's medications were

5

increased. Still, the ALJ did not explain how the changing dosage of medication related in any way to his functional capacity. The record did not indicate that the medication fully or even largely addressed his mobility or pain issues. Each of the ALJ's cited reports indicated slight improvements following increases in the medication, but in each report, Plaintiff still reported high levels of pain and continued mobility limitations. D.E. 9 at 563 ("He states that his pain is improved with gabapentin 400 mg 3 times a day. He would like to increase the dosage [if] possible . . . He still experiences pain in his neck and back but states that it is improved"), 552 (reporting that, following the increase in his pain medication in July 2020, "Gabapentin has improved his neck and lower back pain, but he is still functionally limited. His back and pain and left lower extremity paresthesias affects his ability to walk reliably"), 554 (recording that, on October 23, 2020, Hughes "continues to have constant neck and low back pain"); *see, e.g., id.* at 715 (finding that as recently as September 20, 2022, Hughes only had 31% of his maximum function in his lower extremities).

The ALJ next stated that "[Hughes] did not complain about not being able to perform his daily activities until July 2022." This is also inaccurate. During the time period between when Hughes's pain medication was increased in July of 2020 (*see* D.E. 9 at 20) and July of 2022, Hughes made multiple complaints about his ability to perform activities. *See e.g. id.* at 686 (reporting in April 2022 that "[his] daily activities are affected. He is unable to do dishes or sweep without being in constant pain. He is able to use a bar stool sometimes to cook but he can't do that very long at all. He has difficulty bending over and reaching things on the ground"). The ALJ's opinion specifically noted that Hughes complained about challenges concerning his everyday activities during this time period. *See, e.g.* D.E. 9 at 21 ("On April 25, 2022 . . . [h]e reported having to use a shopping cart to get through the store. He endorsed trouble walking due to balance,

poor sleep, involuntary hand movements on the left, and difficulty bending over and reaching things on the ground.").

Although the ALJ did not provide a citation, there is one exam in the dense record that found Plaintiff had "full muscle strength in all of his extremities except 4/5 strength in his lower extremity." D.E. 9 at 23 (referencing D.E. 9 at 555). Even within that same report, though, Mr. Hughes was noted as still having other postural issues. *Id.* at 554 (noting a report of constant neck and lower back pain). Regardless of the determination of fact, the ALJ's analysis appears to be a prime example of the "cherry-picking" courts are concerned about. *See Gentry v. Comm'r Soc. Sec.*, 741 F.3d 708, 724 (6th Cir. 2014) (reversing where the ALJ "cherry-picked select portions of the record" rather than doing a proper analysis (quoting *Minor v. Comm'r of Soc. Sec.*, 513 Fed. App'x 417, 435 (6th Cir. 2013))).

Correcting for these misstatements and cherry-picking, Dr. Hilliard's report appears to be supported and consistent with the remainder of the record. A medical opinion's supportability turns on the amount of relevant objective medical evidence and the supporting explanations presented by the medical source to support their opinion. 20 C.F.R. § 404.1520c(c)(1). Dr. Hilliard's opinion detailed Hughes's diagnoses and medical issues, symptoms, former and current treatments, and tested functional limitations. D.E. 9 at 449-450. These findings were consistent with the record as a whole, almost half of which was made up of reports from Dr. Hilliard and his staff. These tended to consistently note Hughes's limited mobility, high pain levels, and difficulty balancing. Given the disparities between the ALJ's analysis and the record, this failure to follow agency procedure was a harmful legal error. The lack of appropriate explanation affects the substantial rights of Plaintiff, particularly as the opposite conclusion is substantially justified.

This procedural failure is cause for remand. The articulated reasoning behind this finding was not just insufficient, it misconstrued the record. Without any legitimate explanation regarding supportability or consistency, the ALJ did not fulfill her articulation requirements.

## II.    *Medical Opinions of State Agency Physicians*

Plaintiff next asserts that the ALJ failed to adequately articulate her finding of persuasiveness as to the two state agency physicians. The ALJ explained she found the two state agency physicians persuasive, except for their findings that Plaintiff's inflammatory arthritis was a severe impairment, and that he could "frequently climb ramps and stairs; frequently stoop, kneel, crouch, and crawl; and should avoid all concentrated exposure to hazards (machinery and heights)." *Id* at 23. Instead, the ALJ found that inflammatory arthritis was not a severe impairment, that Hughes could only occasionally climb ramps and stairs; occasionally stoop, kneel, crouch, and crawl; and frequently be exposed to hazards (like unprotected heights or dangerous moving machinery). *Id.* at 19. In explaining how she came to these conclusions, the ALJ wrote:

> The record showed that claimant had two back surgeries in 2019 and developed post-surgery complications that required wound care. He also developed some reduced sensation to light tough in his left foot. His medications were adjusted and controlled his pain. He also admittedly resumed his daily activities and generally walked with a normal gait throughout the period at issue until his tendinitis diagnosis. Following physical therapy, his pain in his extremities got better, and he had only slightly reduced muscle strength.

D.E. 9 at 23.

This purported explanation includes no citation to the record, leaving it unclear how the ALJ developed these generalized medical findings. While the ALJ stated she found the two medical source opinions partially persuasive, she provided no justification where she departed from their findings. Both physician statements said Hughes's arthritis was a severe impairment, but the ALJ disagreed. D.E. 9 at 63, 70. Both doctors agreed that Hughes should avoid exposure to hazards; Dr. Booth specifically included Hughes should avoid "unprotected heights." *Id.* at 66,

8

73. There is no explanation as to why the ALJ found that Hughes could "frequently be exposed to unprotected heights or dangerous moving machinery." D.E. 9 at 23.

At the same time, the ALJ incorrectly stated that her opinion was supported by both Drs. Booth and Geile. The ALJ stated that the state agency consultants both found "the claimant could perform light work except he could frequently climb ramps and stairs but never climb ladders, ropes or scaffolds; could frequently balance, stoop, kneel, crouch, and crawl . . .." D.E. 9 at 23. However, only Dr. Booth's report listed these findings. D.E. 9 at 65. Dr. Geile's report, on the other hand, said Hughes could only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. *Id.* at 72. The ALJ did not explain this inconsistency, or why she found Dr. Booth's opinion more persuasive.

The Commissioner claims that "the ALJ reasonably concluded that the doctors' findings were persuasive based on their review of the medical evidence available to them, which the ALJ outlined in great detail her decision." D.E. 12 at 8. Regardless of the ALJ's factual determination on this matter, she did not properly articulate her reasoning. The articulation standard does not require much explanation, but it does require some explanation. The ALJ's explanation was only a reiteration of some of her earlier findings, which were irrelevant to the medical opinions at issue. The ALJ's opinion did not point to any accurate support or consistency in the record.

Due to this lack of articulation, and assertions directly contrary to the record, the ALJ's opinion should be remanded for further proceedings on the persuasiveness of the state agency physicians.

### III. Medical Necessity of a Hand-Held Assistive Device

Along with reviewing the application of legal standards, courts may substantively review an ALJ's findings of fact. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

9

Findings of fact are subject to the substantial evidence standard of review. 42 U.S.C. § 405(g). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Id*. (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff contests the ALJ's finding that Hughes did not medically require a hand-held assistive device. The ALJ's report stated:

> At the hearing, the claimant testified that he has a cane, which was prescribed by Dr. Hilliard. He reported that he uses the cane every time he goes outside because gets numbness in his left leg. He uses/leans the wall to get around when he is inside the house. He said can walk three to four minutes without a cane and walk a little more with a cane. He says when he goes shopping, he cannot go through the store without leaning on a shopping cart. (Hearing Recording @ 12:18:41 ff). In his adult function report, the claimant also indicated he had a limp and used a cane (Exhibit 1E, page 2). However, from a review of the record, the claimant has repeatedly told

10

> his physicians that he did not always use a cane in December 2020 and April 2022 (Exhibits 9F; 89-100; 13F, pages 17 and 22; and 16F, pages 23-30). He intimated that he had been using a walking stick in July 2022 (Exhibit 16F, pages 34-35). The claimant generally walked with a normal gait, even with the reduced sensation to light touch in his left foot. (Exhibits 9F, pages 102-105; 16F, pages 1-3; and 17F). He had difficulty walking in July 2022 secondary to his Achilles tendinitis. He went to physical therapy and was maintained on his medication. In December 2022, he reported feeling 80 percent better in his left foot but indicated that his right foot wars starting to do what his left foot did (Exhibit 18F, pages 14 and 22-28). The claimant mostly reported intermittent use of a cane/walker and frequent falls. However, he later admitted to no falls over the past year. Neither his cane use nor falls were documented in the record.

D.E. 9 at 22-23.

Under SSA regulation, for a cane or other mobility device to be medically necessary, a claimant must show "(1) medical documentation establishing the need for a hand-held assistive device to aid in walking, and (2) medical documentation describing the circumstances for which it is needed." D.E. 12 at 9 (citing SSR 96-9p, 1996 WL 374185 (July 2, 1996)).

The ALJ was incorrect to say that Hughes' cane use and falls were not documented in the record. *See* D.E. 9 at 23. Rather, the cane use and falls were documented in the record several times, some of which the ALJ referenced in her opinion. *See, e.g., id.* at 545 (". . . he occasionally falls on uneven surfaces and uses a walking stick as needed."), 554 ("He has fallen 3 times since his last appointment."), 686 ("He has been having multiple falls. He does have a walker and a cane that he uses intermittently . . . He has trouble walking due to his balance").

Nonetheless, the record lacked medical documentation establishing his need for a cane and describing the circumstances of its use. While Hughes stated that the cane was prescribed to him, there was no medical documentation in the record indicative of that prescription. D.E. 9 at 51. All references to a mobility aid were Hughes's self-reporting. The ALJ's opinion cited multiple places in the record which stated Hughes does not always use a mobility aid. So, while there are mentions

11

of a walking stick in the record, there is substantial evidence contradicting Hughes's medical need for a mobility aid.

Therefore, because the ALJ's findings were supported by substantial evidence, the case is not subject to remand on this issue.

### IV. Consultative Exam

Plaintiff finally argues that the ALJ erred in declining to order a consultative exam. The first four steps of the evaluative process place the burden of proof on the claimant to establish disability. Still, the ALJ must "investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) (citing *Richardson v. Perales*, 402 U.S. 389 (1971)). If there is insufficient evidence, the ALJ must develop the record, such as through ordering a consultative examination. 20 C.F.R. § 416.912(d); *Deskin v. Comm'r of Soc. Sec.*, 605 F. Supp. 2d 908, 912 (N.D. Ohio 2008). The decision of whether to order a consultative examination is at the discretion of the ALJ. 20 C.F.R. § 404.1519; *Foster v. Halter*, 249 F.3d 348, 355 (6th Cir. 2001).

Here, the ALJ was within her discretion to decide against requesting a CE. As explained by the Commissioner, the ALJ examined the full record, which included "Plaintiff's complete medical history, his testimony, a treating source opinion, and the findings of two state agency physicians." D.E. 12 at 10. This was ample information to permit the ALJ to make a well-supported decision. Her choice against further investigation was not a reversible abuse of discretion.

Plaintiff argues that if the ALJ did not err by proceeding without a CE, she still improperly "supplant[ed] her own medical judgment for that of Dr. Hilliard." D.E. 13 at 7. Plaintiff suggests that the record contained bare medical findings that were unrelated to the RFC; thereby requiring

the ALJ to have made the medical connection without expert advice. *Id.* (citing *Deskins*, 605 F. Supp. 2d at 912.). There was, though, sufficient information in the record for a lay person to come to the ALJ's conclusions regarding the RFC. The ALJ's RFC determination had an explicit factual basis and was at least partially consistent with the state agency medical opinions.

As such, the ALJ did not err by declining to order a CE and did not improperly replace medical evidence with her own judgment.

## V.     Request for Relief

Plaintiff requests the Court reverse the Commissioner's decision and immediately award benefits. D.E. 10 at 11. As Plaintiff notes, such immediate award is only appropriate "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Id*. (citing *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994)). That is not the case here. As explained above, there are a number of outstanding factual issues relating to the medical source opinions. As such, immediately awarding benefits would be inappropriate.

The errors at issue do, however, justify remand. These procedural errors are sufficient for the Court to determine reconsideration is necessary. Upon remand, the ALJ shall reconsider the medical source opinions of Drs. Hilliard, Booth, and Geile in accordance with the regulatory requirements discussed herein. The Court offers no opinion on the ultimate outcome of this query. Rather, the ALJ is instructed to strictly comply with the SSA's procedures created to aid the claimant's understanding of the outcome and to facilitate meaningful review.

## VI.     Conclusion

The Court being sufficiently advised, **IT IS HEREBY ORDERED** as follows:

(1) Plaintiff's request to remand (D.E. 10 at 11-12) is **GRANTED**. Plaintiff's request for a reversal and immediate award of benefits (*id.*) are **DENIED**.

(2) Commissioner's request to affirm (D.E. 12 at 12) is **DENIED**. The Court **REMANDS** this matter to the Commissioner under the fourth sentence of 42 U.S.C. § 405(g) for further consideration of the persuasiveness of the medical source opinions from Drs. Hilliard, Booth, and Geile.

This the 8th day of November, 2024.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge